Kala Abram v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-172-CR

     KALA ABRAM,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 94-798-C
                                                                                                                

O P I N I O N
                                                                                                                

      In April of 1995, Kala Abram was placed on probation after being found guilty of
unauthorized use of a motor vehicle. The terms and conditions of probation were amended the
following September. In March of 1997, the State filed a motion to revoke the probation, alleging
four separate violations. Abram’s revocation hearing was held at the same time as his jury trial
for aggravated robbery.


 After the jury returned a guilty verdict on two counts of aggravated
robbery and assessed twenty-five years in prison and a $3,000 fine in each case, the court entered
findings that Abram had violated the conditions of his probation and thus revoked such probation. 
STANDARD OF REVIEW
      The only question presented in an appeal from an order revoking probation is whether the trial
court abused its discretion. Brumbalow v. State, 933 S.W.2d 298, 300 (Tex. App.—Waco 1996,
pet. ref’d). Once granted, probation should not be arbitrarily withdrawn; it is authorized only
upon a showing that the probationer has violated a condition imposed by the court. DeGay v.
State, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987). In a revocation proceeding, the state must
prove the allegations of the motion by a preponderance of the evidence. Jenkins v. State, 740
S.W.2d 435, 437 (Tex. Crim. App. 1987). This burden is met when the greater weight of the
credible evidence creates a reasonable belief that a condition of probation has been violated as
alleged. Id. 
SUFFICIENCY OF THE EVIDENCE
      In his first point, Abram complains that the trial court abused its discretion in revoking his
probation because the State did not prove by a preponderance of the evidence that he was guilty
of unauthorized absence from a community corrections facility, as alleged in the first allegation
in its motion to revoke probation. When Abram was initially placed on probation in April of
1995, he was ordered
to reside at a county restitution center to be determined by the McLennan County Community
Supervision and Corrections Department for a period of not less than 3 months nor more than
12 months, pursuant to the community rehabilitation center provisions of the TCCP, art.
42.12, in lieu of incarceration in the Institutional Division of the Texas Department of
Criminal Justice. . . .
(Emphasis added). On September 5, 1995, although the name of the “McLennan County
Residential Treatment Center” had been changed to the “Restitution Center” on July 5, an order
was signed amending some of the conditions of probation. Specifically, the above was changed
to require Abram to reside at the McLennan County Court Residential Treatment Center.



      In its first allegation, the State urged that on September 17, 1995, Abram committed the 
violation of unauthorized absence from a community corrections facility. The term “community
corrections facility” is defined to include both a restitution center and a court residential treatment
facility. See Tex. Gov’t Code Ann. § 509.001 (Vernon Supp. 1997).
      In support of this allegation, the State called Kevin Duckworth, a probation officer with the
McLennan County Community Supervision and Corrections Department, to testify. Duckworth
testified that Abram first came to the Restitution Center on September 5 from another facility, and
violated the rules of the Center by leaving and not reporting back. Although there is ample
evidence that he left the Center in violation of the rules of that facility and in violation of his
amended probation order, Abram claims that the amended order was not offered into evidence
and, without the amended order, the judge could not validly revoke his probation. Thus, he
argues, without the amended order in evidence, there is no support for a finding that he failed to
reside at the Restitution Center or had an unauthorized absence from that facility. We disagree.
      The initial order, which was offered into evidence and upon which the trial court relied in its
findings, ordered Abram to reside at “a county restitution center.” The evidence shows that he
left such an institution without authorization. Abram reported to the Restitution Center on
September 5 as his probation required. While residing there, he left the facility and failed to
report back as per the conditions of his probation. Although it is true that the amended order
specifically required Abram to stay at the Center, the order which was placed into evidence
required the same of him, only in more general terms. The State alleged and proved by a
preponderance of the evidence that Abram had an unauthorized absence from a community
corrections facility, which is defined by statute as including both a county restitution center and
a court residential treatment facility. Although the better practice would be to introduce the
probation order with all current amendments into evidence and to match the allegations in the
motion to the terms of the order, we find that the court did not abuse its discretion in revoking his
probation. Point one is overruled.
      Abram complains in his second point that the court abused its discretion in revoking his
probation because the State failed to show that he committed aggravated robbery by a
preponderance of the evidence. Abram urges that the State failed to prove that he placed Horace
Thompson, the victim in one of the aggravated robberies, in fear of bodily injury or death in the
course of committing the theft, a necessary element to aggravate the crime. Tex. Pen. Code
Ann. §§ 29.02-.03 (Vernon 1994); Caldwell v. State, 943 S.W.2d 551, 552 (Tex. App.—Waco
1997, no pet.).


 
      We believe the record shows that Thompson was in fear of imminent bodily injury or death. 
As stated by the Austin Court of Appeals, a rational trier of fact could conclude beyond a
reasonable doubt that Abram’s demand for money and his generally aggressive manner were
sufficient to place a reasonable person in the victim’s circumstances in fear of imminent death or
bodily injury. Welch v. State, 880 S.W.2d 225, 227 (Tex. App.—Austin 1994, no pet.). In this
case, not only did Abram grab Thompson’s money, but he threatened to shoot Thompson if he or
Reed, the other victim, tried to follow him. Thompson also testified that he knew Abram was
holding a gun and feared that he would use it.
      Abram urges that because Thompson testified that he did not feel threatened until after Abram
had taken his money, he could not be said to have been in fear of imminent death or bodily injury
while the theft was being committed. We do not believe that this is an accurate interpretation of
the phrase “in the course of committing theft.” According to the Penal Code, “in the course of
committing theft” means “conduct which occurs in an attempt to commit, during the commission,
or in immediate flight after the attempt or commission of theft.” Tex. Pen. Code Ann. § 29.01
(emphasis added);Caldwell, 943 S.W.2d at 552. We find the record to be sufficient to support a
finding that Thompson was placed in fear of imminent bodily injury or death. The record shows
that Thompson was afraid for his life when Abram pointed a gun at him and threatened to shoot
him. Point two is overruled.  
      Point three complains that the trial court abused its discretion in revoking probation based on
the State’s allegation number four because the State failed to prove that he unlawfully appropriated
property from Marvin Reed without his consent. Abram argues that there is no evidence that Reed
did not consent to the taking of his billfold. We do not find this argument to be persuasive. 
      As mentioned earlier, “in the course of committing theft” includes conduct which is merely
an attempt to commit theft. Tex. Pen. Code Ann. § 29.01; Caldwell, 943 S.W.2d at 552. This
intent does not have to be verbalized, but can be inferred from circumstantial evidence. Wolfe v.
State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). The record reveals that Abram stated that
he came to the park with the intention to rob Thompson. However, he told Reed, “you ain’t going
no where, you might have something in your pocket.” Abram then grabbed Reed’s billfold,
determined that there was no money in it, and threw it into the bushes. Although he did not
specifically ask for the billfold, such a request was not necessary. We believe the record shows
that prior to discovering that the billfold was empty, Abram intended to steal from Reed. 
      Additionally, even if we did not conclude that Abram intended to steal from Reed, such a
conclusion is not necessary. It is required only that Reed was placed in fear of bodily injury or
death while a theft was occurring. It would be sufficient that Reed be in fear while Abram was
robbing Thompson. See Ulloa v. State, 570 S.W.2d 954, 957 (Tex. Crim. App. 1978); Govan v.
State, 671 S.W.2d 660, 662 (Tex. App.—Houston [1st Dist.] 1984, pet. ref’d) (because the
defendant placed the bank manager in fear of her life while robbing the bank, the evidence was
sufficient to support a conviction for aggravated robbery against the bank manager). It is not
necessary that the one in fear also be the victim of the theft. Id. “What separates robbery from
theft is the human element, that is, if in the course of committing theft the defendant causes bodily
injury to another or places another in fear of imminent bodily injury or death, the defendant has
then committed robbery.” Camacho v. State, 825 S.W.2d 168, 169-71 (Tex. App.—Fort Worth
1992, pet. ref’d). Based on the evidence in the record, we find that the trial court did not abuse
its discretion in revoking Abram’s probation based on allegation number four. We overrule point
three.
      In point four, Abram argues that the trial court abused its discretion in revoking probation
upon a determination that he had committed more than one aggravated robbery because the State
alleged only one robbery in its motion to revoke probation. The trial court stated, “the Court
further finds, and makes these findings beyond a reasonable doubt, that on or about the 26th day
of November, 1995, you committed the subsequent offenses of aggravated robbery.” Abram did
not file a motion to quash the motion to revoke probation and, as a result, cannot raise sufficiency
of the motion for the first time on appeal. Peoples v. State, 566 S.W.2d 640, 642 (Tex. Crim.
App. 1978); Vance v. State, 485 S.W.2d 580 (Tex. Crim. App. 1972); Guerra v. State, 750
S.W.2d 360, 361 (Tex. App.—Corpus Christi 1988, pet. ref’d). Point four is overruled.
      Because we have determined that the evidence shows Abram violated the terms of his
probation, and because only one such violation need be supported by the evidence to support a
probation revocation, we affirm the judgment. See Stevens v. State, 900 S.W.2d 348, 350 (Tex.
App.—Texarkana 1995, pet. ref’d); Holmes v. State, 752 S.W.2d 700, 701 (Tex. App.—Waco
1988, no pet.).


                                                                               BILL VANCE
                                                                               Justice

Before Chief Justice Davis,
           Justice Cummings, and
           Justice Vance
Affirmed
Opinion delivered and filed November 19, 1997
Do not publish